UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| VLADAN MILOSAVLEJEVIC and ANGEL MICHAIL AND GABRIIEL, LLC, <br><br> Plaintiffs/Petitioners, <br><br> v. <br><br> CITY OF BRIER, <br><br> Defendant/Respondent. | CASE NO. C16-1414 RSM <br><br> ORDER DENYING PETITIONER'S LUPA CLAIM |

## I.   INTRODUCTION

This matter comes before the Court on Petitioner's claim under Washington's Land Use Petition Act ("LUPA"), RCW 36.70C, *et seq*.[1] RCW 36.70C.080(5) provides that the "parties may waive the initial hearing by scheduling with the court a date for the hearing or trial on the merits and filing a stipulated order that resolves the jurisdictional and procedural issues raised by the petition, including the issues identified in subsections(3) and (4) of this section." Accordingly, on September 30, 2016, the parties filed a stipulated request for a hearing on the merits of Petitioner's LUPA claim. Oral arguments were heard on March 9, 2017. At the end

---

[1] In his Complaint before this Court, Petitioner has also alleged claims under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc, *et seq.* and the Civil Rights Act, 42 U.S.C. § 1983. However, those claims are not before the Court at this time.

ORDER - 1

of argument, the Court made an oral ruling that Petitioner's claim would be DENIED. This Order memorializes, and sets forth the bases for, that ruling.

## II. BACKGROUND

On or about May 19, 2015, Petitioner filed a Variance Application with the City of Brier, in conjunction with his desire to build a chapel on his residential property.[2] Administrative Record ("AR") 000001-000025. The property is 33,706 square feet (.76 acres) in size. AR 000347. Petitioner's religious beliefs arise from his background in the Serbian Orthodox Church. The proposed chapel would have two domes (AR 000011), a cross-shaped footprint (AR 000012) and an interior decorated with frescos. AR at 000158. The chapel would not be used for residential purposes, nor would it be open to the public. The proposed height is 40 feet, five and ½ inches from ground level to the top of the domes. The height is important to Petitioner because, based on his religious beliefs, the height of the chapel needs to be 40 feet from the interior floor to the exterior height. Dkt. #20 at 2. The extra 5 and ½ inches is necessary for the floor, and represents the distance from the level of the ground to the interior floor height. *Id.*

The property is located in the City's RS 12,500 district, a residential zone. AR 336. The RS 12,500 zone is intended to permit development of single family residences, maintaining a limited intensity of land use and a scale and character of development that is compatible with neighborhood residential uses. AR 348. The lots surrounding the Property are developed with residences. AR 347 and 366-383. The maximum building height in the RS 12,500 zone is 30 feet. AR 348; Brier Municipal Code ("BMC") 17.29.010.E.

---

[2] Title to the property is in the name of Angel Michail and Gabriiel LLC, a limited liability company wholly owned by Petitioner Milosavlejevic.

ORDER - 2

The procedure for variance applications is set forth in BMC 17.36.050E. After determining that the application is complete, the staff reviews the application and prepares a report to the Planning Commission. BMC 17.36.050E.l. The City Clerk sets a date for a public hearing on the application by the Planning Commission. *Id.* After the public hearing is completed, "the planning commission shall transmit to the city council its decision and a report of the pertinent evidence offered at the hearing. The decision of the planning commission on the proposed change shall be advisory only." BMC 17.30.050E.3. Upon receipt of the Planning Commission's recommendation, the City Council holds another public hearing on the variance application. For such hearing, "[n]o additional notice shall be required. At the conclusion of the public hearing, the city council will consider the recommendations of the planning commission together with any additional facts presented and may grant, deny or modify the requested variance . . . and shall prepare written findings and conclusions that support and explain its decision." BMC 17.36.050E.4.

On March 16, 2016, the Planning Commission held its hearing, during which members of the public, the Petitioner, and City staff provided input on the variance application. The Commission continued the hearing to March 30, 2016, to allow Petitioner and City staff to provide additional information. AR 343. At the continued hearing on March 30th, the City Planner presented a Revised Staff Report, and the Commission heard comments from Petitioner and one member of the public. *Id.* AR 343. The Planning Commission then deliberated, voted unanimously to recommend denial of the variance application, and directed staff to prepare a written proposed Report and Recommendation to the City Council for the Commission's consideration at its April 20, 2016, meeting. AR 344. At the April 20th meeting, the Planning Commission reviewed the proposed Report and Recommendation, and voted to postpone action

ORDER - 3

until the May 18, 2016, meeting due to allegations by Petitioner that his religious rights would be violated if the Commission denied his application.  AR 344.  The Commission also authorized the Chair to re-open the hearing on the application if recommended by the City Attorney.  AR 344.  On May 2, 2016, the Chair re-opened the hearing based upon the City Attorney's recommendation.  AR 344.  On May 18, 2016, the Planning Commission held the re-opened hearing, received a Final Revised Staff Report with attachments (AR 346-468), and again heard comments from Petitioner, three members of the public, and staff.  The Planning Commission considered the documents, public comments, and other information, and passed a motion to approve the Report to the City Council, recommending that the variance be denied.[3] AR 343-45. The Commission noted that only two of the eight mandatory criteria for granting a variance had been met.  AR 344 and 349-57.

The City Council held its public hearing on July 19, 2016.  Dkt. #17 (*Transcript #2*). At the hearing, the City Council was presented with: (1) Petitioner's variance application (AR 361-363); (2) materials submitted by Petitioner to explain and support his application (364-65 and 386-393); (3) the City Council Staff Report (AR 336-8); (4) the Planning Commission's Report and Recommendation to the City Council, with its attachments (AR 343-45); (5) the Final Revised Staff Report to the Planning Commission, with Attachments A through N (AR 346-468); (6) the Minutes for the Planning Commission's March 16, March 30, April 20 and May 18, 2016 meetings, which included summaries of the public comments made at the Planning Commission hearing (AR 469-477); (7) written comments on the variance application submitted to the City, which were attached to the Final Revised Staff Report to the Planning

---

[3] Although Petitioner objected to the many continuances of his Planning Commission hearing on the basis that they constituted more than one open record hearing, he did not raise such a challenge before this Court, and now concedes that those were continuations of a single hearing. Dkt. #22 at 2.

ORDER - 4

Commission (AR 427-468); and (8) documents assembled by City staff relating to Petitioner's claim that the federal Religious Land Use and Institutionalized Persons Act required the City to grant his variance request, which were attached to the Final Revised Staff Report to the Planning Commission (AR 394-426). City staff also provided the City Council with draft Findings of Fact and Conclusions of Law and Decision, consistent with the Planning Commission's Report and Recommendation. AR 339-42.

After the hearing opened, City staff summarized the application and process to date, and stated that staff and the Planning Commission recommended that the application be denied because six of the eight variance criteria were not met. Dkt. #17 at 4-5. The Mayor then invited comments from Petitioner or anyone in the audience who had not spoken at the prior hearing pertaining to Petitioner's application. *Id.* at 5. Three people who had not spoken before the Planning Commission spoke to the Council. Two of those people voiced concerns in opposition to the variance, and one person asked for some clarification and then stated his general opposition to the chapel. *Id.* at 6-10. Petitioner objected to the submission of new evidence on the grounds that state law allows only one open-record hearing in land use decisions. *Id.* at 11-12. Then, one additional comment letter was read into the record. AR 478 and Dkt. #17 at 13-14. Petitioner was permitted to respond to the letter. *Id.* at 14. In response to Petitioner's objection, the City Attorney explained that the state law and the City's ordinances may or may not conflict, but he had recommended that the Council follow the City ordinance and hold two public hearings. *Id.* at 17. He further noted that if the argument went any further, it would have to be decided by another body. *Id.*

Ultimately, the City Council denied the variance, and Petitioner filed the instant action seeking review under LUPA. Dkt. #1. In addition, he included causes of action under the

ORDER - 5

Religious Land Use and Institutionalized Person Act, and the Civil Rights Act, which are not being considered by the Court at this time. *Id.* Petitioner contends that the City did not follow the procedures required by law by having more than one open-record hearing. Petitioner asserts that the sole question before this Court is whether the City engaged in an unlawful procedure in the processing of Petitioners' variance requests under Washington state law.

### III.   DISCUSSION

LUPA governs judicial review of land use decisions. *Durland v. San Juan County*, 182 Wn.2d 55, 63, 340 P.3d 191 (2014). A "land use decision" is "a final determination by a local jurisdiction's body or officer with the highest level of authority to make the determination, including those with authority to hear appeals . . . ." RCW 36.70C.020(2). When reviewing an administrative land use decision under LUPA, an appellate court stands in the shoes of the superior court and reviews the administrative record. RCW 36.70C.130; *King County Dep't of Dev. & Envtl. Servs. v. King County*, 177 Wn.2d 636, 643, 305 P.3d 240 (2013). A party seeking the reversal of a land use decision has the burden to establish one of six statutory standards under LUPA:

> (a) The body or officer that made the land use decision engaged in unlawful procedure or failed to follow a prescribed process, unless the error was harmless;
>
> (b) The land use decision is an erroneous interpretation of the law, after allowing for such deference as is due the construction of a law by a local jurisdiction with expertise;
>
> (c) The land use decision is not supported by evidence that is substantial when viewed in light of the whole record before the court;
>
> (d) The land use decision is a clearly erroneous application of the law to the facts;
>
> (e) The land use decision is outside the authority or jurisdiction of the body or officer making the decision; or

ORDER - 6

>   (f) The land use decision violates the constitutional rights of the party seeking relief.

RCW 36.70C.130(1).  This case implicates Subsection 1(a).  Subsection (a) is a question of law that this Court reviews *de novo*.  *Phoenix Dev., Inc. v. City of Woodinville*, 171 Wn.2d 820, 828, 256 P.3d 1150 (2011).

   Petitioner contends that the City did not follow procedures required by law by having more than one open-record hearing.  Dkt. #20 at 6.  Petitioner supports his argument by relying on RCW 36.70B.050, which provides:

>   Local government review of project permit applications required – Objectives.
>
>   Not later than March 31, 1996, each local government shall provide by ordinance or resolution for review of project permit applications to achieve the following objectives:
>
>   (1) Combine the environmental review process, both procedural and substantive, with the procedure for review of project permits; and
>
>   (2) Except for the appeal of a determination of significance as provided in RCW 43.21C.075**, provide for no more than one open record hearing and one closed record appeal**. (emphasis added)

Petitioner argues that the July 19th hearing, during which the Mayor invited additional comments from community members who had not previously spoken at the Planning Commission hearing, violates RCW 36.70B.050, and therefore this Court should reverse the City Council's rejection of his variance and remand the matter back to the City for new consideration. Dkts. #20 and 22.  The City responds that it did not violate procedure because when the City Council held its hearing, the Council was simply following the City Code, and the City Code does not violate state law. Dkt. #21 at 11-13.  Although both parties provide several arguments as to whether the procedure followed was in fact unlawful, the Court need

ORDER - 7

not resolve that question because the Court determines that even if the City employed an erroneous procedure, any such error was harmless.[4]

LUPA requires proper process unless the "error was harmless." RCW 36.70C.130(1)(a). Harmless error is one that is "'not prejudicial to the substantial rights of the party assigning [error,]'" and does not affect the outcome of the case. *City of Bellevue v. Lorang*, 140 Wn.2d 19, 32, 992 P.2d 496 (2000) (quoting *State v. Smith*, 131 Wn.2d 258, 264, 930 P.2d 917 (1997)). *See also Young v. Pierce County*, 120 Wn. App. 175, 188, 84 P.3d 927, 933 (2004). At the July 19, 2016, meeting, the Mayor allowed comments from three people who had not previously spoken at the Planning Commission hearing and read a letter from another person into the record. Dkt. #17. Petitioner asserts that even if these comments were similar to those previously voiced, the Court cannot assume they were harmless. Dkt. #22 at 7-

---

[4] The parties also presented opposing arguments as to whether the variance application procedure falls under RCW36.70B, whether Petitioner has waived his challenge to the procedure, and who has the burden of proof on the harmless error question. *See* Dkts. #20, #21 and #22. For the reasons set forth by Petitioner in his briefing and at oral argument, the Court finds that Petitioner did not waive his objection to the procedure at issue in this Order. *See* Dkt. #22 at 2. Further, the Court assumes for purposes of this decision, without deciding, that the denial of the variance application constitutes a land use action that can be challenged under RCW 36.70C. However, for the reasons set forth by Respondent during oral argument, the Court agrees that Petitioner has the burden of proving harmless error. As noted above, a party seeking the reversal of a land use decision has the burden to establish one of six statutory standards under LUPA. Indeed, RCW 36.70C.130 states:

> The court may grant relief **only if the party seeking relief has carried the burden of establishing** that one of the standards set forth in (a) through (f) of this subsection has been met. The standards are:
>
> (a) The body or officer that made the land use decision engaged in unlawful procedure or failed to follow a prescribed process, unless the error was harmless; . . .

RCW 36.70C.130(1)(a) (emphasis added). The Court agrees that the statute puts the burden on Petitioner to establish the error was not harmless. But even if the burden were to be on Respondent to establish the error was harmless, the Respondent has done so in this case.

ORDER - 8

9. This is because the Court may only examine the administrative record in this matter, which would not include details about how persuasive any particular comments were.[5] *Id.*

Just after the meeting closed and prior to the City Council voting on the variance, the City Attorney provided the Council with the following direction:

> I don't know that I have everything that's in the packet. But it's my understanding that staff has given to Council a Proposed Decision (inaudible) on the first page. So this would be on page 4 of your – on the back of the second page, and there is a proposed findings of fact and conclusions of law and decision for you, which staff has prepared.
>
> And as the Council is probably aware, findings of fact and conclusions of law and a decision is required to be entered by the Council by the Brier Municipal Code for this variance application as well as, you know, the Planning Commission was supposed to give to the Council a recommendation.
>
> You have the recommendation. You now have the opportunity to enter the decision, the staff has prepared for you a recommended decision. You have the opportunity to vote on this decision tonight.
>
> I do want to tell you – I should make a few comments about the testimony you've heard tonight as it relates to the ability to – for you to enter a decision tonight based upon the documents in the packet. And that would be that having heard this – the testimony tonight, including the letter from Mr. Johnson and including the argument by Mr. Milosavlejevic – I said it right – we believe still that you can enter a decision tonight.
>
> The testimony of the three individuals who spoke before the applicant are very similar to the testimony that the Planning Commission has summarized in the minutes of this hearing and given to you.
>
> **There was nothing that I heard tonight that addressed, with any particularity, any of the variance criteria**. They were very general comments about the people's objection to an approval of the application.

---

[5] The letter read into the record voiced concerns about the registration status of the LLC landowner. Dkt. #17 at 13:12-14:7. While Petitioner asserts this was new evidence, the record demonstrates that the same information was brought to the attention of the Planning Committee by the same person prior to the Council meeting. AR 000061 and Dkt. #16 at 10:6-2. Thus, this information had already been considered when the Planning Commission presented its proposed Findings of Fact and Conclusions of Law to the City Council.

ORDER - 9

> And it's very similar to the evidence that we have before you that's reported by the Planning Commission.
>
> So in my opinion, the testimony tonight doesn't change the findings and conclusions that are in the draft decision before you.
>
> . . .
>
> . . . If a council member wishes to make a motion that the findings/conclusions and decision, as presented in the packet before the Council be approved, that would be a proper motion to make.

Dkt. #17 at 15:15-19:6 (emphasis added).

Without any further discussion or questions, Council Member Krienke moved as follows:

> Well, I'll make a motion, then. (Inaudible) discussion that this be seconded.
>
> **But I'd say based on the thoroughness of the Planning Commission and the city staff and, frankly, the criteria required to receive a variance and all these – what I've seen on this – I would move that we would deny the application of VA – or V15-01 for the variance that was requested.**

Dkt. #17 at 19:9-16 (emphasis added). After the motion was clarified that the Council Member was moving for the adoption of the findings of fact and the conclusions of law drafted by the Planning Commission, and then seconded, the Council unanimously voted to deny the variance. *Id.* at 19:17-21:7.

On this record, it is clear that any error in procedure was harmless. At the time Council Member Krienke moved to deny the variance, he had been advised by the City Attorney that nothing stated at the meeting had addressed the variance criteria, and Mr. Krienke himself indicates that he was relying on the packet from the Planning Commission. He specifically referenced the criteria required to receive a variance, which the Planning Commission had already noted were not met. Dkt. #17 at 19:9-16. There was no discussion among the Council

ORDER - 10

Members of the testimony or the letter heard that evening.  Further, this is not a case where the Planning Commission had recommended the approval of a variance which was denied after further testimony had been taken.  Had additional evidence not been received, all that would have been before the City Council would have been the Planning Commission's recommendation of a denial.  Likewise, there is nothing in the record indicating that any Council Member had any concern with that recommendation regardless of what had been heard at the July 19th meeting.  Additionally, Petitioner was allowed to respond to the comments and letter presented to the Council.  Dkt. #17 at 11:11-12:2 and 14:9-16.

Moreover, the Brier Municipal Code requires that Petitioner meet all eight of the following criteria for the Council to approve the variance:

1. The proposed variance will not amount to a rezone and constitute a change in the district boundaries shown on the official zoning map.

2. Special conditions and circumstances exist which are peculiar to the land such as size, shape, topography or location, not generally applicable to other lands in the same district and that strict enforcement of this division would deprive the property owner of rights commonly enjoyed by other properties similarly situated in the same district under the terms of this division;

3. The special conditions and circumstances do not result from the actions of the applicant;

4. There are unnecessary hardships and practical difficulties which render it difficult to carry out the provisions of this division;

5. The granting of the variance will not be materially detrimental to the public health, safety or welfare or injurious to the property or improvements in the vicinity and zone in which subject property is situated;

6. The reasons set forth in the application justify the granting of the variance, and that the variance is a minimum variance that will make possible the reasonable use of the land;

ORDER - 11

      7. The granting of the variance will generally be in harmony and compatible with this division and in particular the applicable zoning classifications contained herein, the intent expressed in such classifications and the comprehensive plan for the city, and will not be injurious to the neighborhood, or otherwise detrimental to the public health, safety or general welfare in terms of such factors as noise, sanitation, traffic, pollution, erosion, vibration and physical hazards; and

      8. The fact that the property may be utilized more profitably shall not be an element of consideration.

BMC 17.36.050.  Petitioner has not addressed the fact that the Planning Commission found that only two of these criteria had been met – numbers 1 and 8 – but six of the eight had not been met.  *See* Dkts. #20 and #22.  Thus, the Council could not have approved the variance unless it determined that the remaining six criteria had been met.  Petitioner does not explain how following a different meeting procedure would have altered any finding on his ability to meet the remaining six criteria, and therefore how the procedure caused him harm.  *See id.*

      As Respondent notes, the comments at the City Council hearing were non-specific, did not address the variance criteria, and were similar in nature to the comments at the Planning Commission hearing.  Likewise, the statements in the letter had been raised prior to the City Council meeting, and did not cause the Council to stop processing the application even though it urged the Council not to do business with an inactive corporation.  Instead, the Council adopted the proposed Findings of Fact, Conclusions of Law and Decision without change after the hearing, and the Council's decision was consistent with the Planning Commission's recommendation.  On this record, the Court finds that the taking of additional testimony at the July 19th meeting, even if assumed to have been an unlawful procedure, did not prejudice the substantial rights of Petitioner and did not affect the outcome of the case, and was therefore harmless.

ORDER - 12

## IV. CONCLUSION

Having reviewed Petitioner's LUPA claim, the opposition thereto and the reply in support thereof, along with the administrative record, and having considered the parties' oral arguments on March 9, 2017, the Court hereby finds and Orders that Petitioner's LUPA claim is DENIED and DISMISSED. The remainder of Petitioner's claims will be considered in accordance with the Court's Scheduling Order (Dkt. #14).

DATED this 10th day of March, 2017.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE

ORDER - 13