UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

VLADAN MILOSAVLEJEVIC and
ANGEL MICHAIL AND GABRIIEL, LLC,

    Plaintiffs/Petitioners,

v.

CITY OF BRIER,

    Defendant/Respondent.

Case No. C16-1414RSM

ORDER GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PETITIONER'S MOTIONS FOR LEAVE TO FILE SURREPLY AND TO CONTINUE TRIAL AND AMEND CASE SCHEDULE

## I.    INTRODUCTION

This matter comes before the Court on Respondent's Motion for Summary Judgment. Dkt. #32. Petitioner's claims arise from Respondent's denial of his request for a height variance necessary to build a personal chapel. Petitioner's proposed personal chapel would exceed Respondent's 30-foot residential land-use zone's height-cap.[1] Dkt. #20 at 2. Respondent asks the Court to dismiss Petitioner's claims on the basis that (1) Petitioner does not meet the elements necessary to establish a violation of the Religious Land Use and Institutionalized Persons Act's ("RLUIPA"), 42 U.S.C. § 2000ee, substantial burden provision; (2) Petitioner does not meet the elements necessary to establish a violation of RLUIPA's equal terms provision; (3) Petitioner's Civil Rights Act, 42 U.S.C. § 1983 ("Section 1983"), claims are without legal or factual basis;

---

[1] The Court notes that Petitioner previously applied for a building permit, but later abandoned the application. AR 5 and Dkt. #32-1 at 2. Therefore, even if the Court were to find in Petitioner's favor, Petitioner could not yet build his chapel.

ORDER - 1

and (4) delay damages are not available in any event. Dkt. #32. Petitioner opposes the Motion, arguing that genuine disputes exist as to material facts, and therefore respondent is not entitled to summary judgment. Dkt. #33. Additionally, Petitioner has filed a Motion for Leave to File a Surreply and a Motion to Continue Trial Date and Amend Case Schedule. Dkts. #37 and #38. For the reasons discussed below, the Court now GRANTS Respondent's Motion for Summary Judgment and DENIES Petitioner's Motions For Leave To File Surreply and To Continue Trial and Amend Case Schedule.

## II. BACKGROUND

Petitioner Vladan Milosavlejevic seeks to build a personal Serbian Orthodox chapel on property owned by his company, Angel Michail and Gabriiel, LLC., in the City of Brier, Washington ("City").[2] Dkts. #1-1 at ¶ 2 and #33-1 at ¶ ¶ 22-22. To comply with religious standards, Petitioner asserts that his chapel must meet specific architectural dimensions, including two domes, each spanning 40-feet five and one-half inches from the interior floor to the exterior height. Dkt. #17 at 6. Petitioner's property is located in a residential land-use zone. *Id*. Prior to seeking to build a chapel, Petitioner worshipped in his home, and attended Serbian Orthodox church services in King and Snohomish Counties. Dkts. #32 at 7 and #34 at 3.

Under Brier Municipal Code ("BMC") 17.28.010(E), buildings in single-family residential zones may not exceed a maximum height of 30 feet. Individuals planning to erect structures exceeding 30 feet must apply and be approved for height variances in addition to building permits. Dkt. #34 at 12. To obtain a variance, applicants must meet eight criteria. Administrative Record ("AR") at 72. The procedure for processing variance applications is set forth in BMC 17.36.050(E).

---

[2] For ease of reference, Mr. Milosavlejevic and Angel Michail and Gabriiel LLC will be referred to as a singular Petitioner.

ORDER - 2

On May 19, 2015, Petitioner applied for a height variance to construct his chapel. AR 2-3. As proposed, Petitioner's chapel would exceed the City's single-family residential height limit by ten feet, five and one-half inches. Petitioner asserts that his proposed chapel domes are "vehicle[s] for . . . prayers to be sent to the heavens." *Id.* at 25. Petitioner states that while his chapel height specifications originate from his grandfather's wishes, the 40-foot dome measurement originates from the Serbian Orthodox belief that 40 is a holy number. *Id.* at 56; Dkt. #32-1 at 7. According to an architectural report obtained by City Planner Lauren Balisky, under communism, Serbians were prohibited from developing traditional Serbian Orthodox churches in the Byzantine style of architecture. AR 120 (*Ex. K*). Since then, "Serbs in exile, especially in the United States, [are] in a better position to develop previously built church building traditions than indigenous communities." *Id.* The architectural report notes that Serbian Orthodox churches are "not supposed to look like a house, as their functions are completely and fundamentally different. Thus, heights should not be constrained to residential heights." *Id.* at 120-22. The Serbian Orthodox U.S. and Canada's Western American Diocese note that a church's height must be proportional to its footprint in length and width. *Id.* at 123 (*Ex. A*).

On March 30th, the Commission voted unanimously to recommend denying Petitioner's variance application, and directed staff to prepare a report and recommendation to the City Council for consideration at its April 20, 2016 meeting. *Id.* at 344. On April 20th, the Commission reviewed the proposed Report and Recommendation, and voted to postpone action until May 18, 2016, due to Petitioner's allegations that denying his application would constitute a religious rights violation. *Id.* The Commission also authorized its Chair to re-open the hearing on the application if recommended by the City Attorney, which he did on May 2, 2016. *Id.* On May 18th, the Commission held the hearing, received a Final Revised Staff Report with

ORDER - 3

attachments, and again heard from Petitioner, three members of the public, and City staff. AR 346-468. The Commission then passed a motion to approve a report to the City Council, recommending Petitioner's variance be denied. *Id.* at 343-45. The Commission's report noted that Petitioner met only two of eight mandatory criteria for granting variances. *Id.* at 344 and 349-57. On July 19, 2016, the City Council denied Petitioner's application. Dkt. #17 at 21.

Petitioner then filed a Complaint in Snohomish County Superior Court, alleging that the variance procedure violated Washington's Land Use Petition Act ("LUPA"), RCW 36.70C, *et seq.*, and that the denial of the variance burdens his right to due process, free exercise of religion, and equal protection of the law. *Id*. at ¶ 31. Additionally, Petitioner alleged he suffered discrimination by the City because staff had personal vendettas against him. *Id*. at ¶ ¶ 29-30. Petitioner believes the City's Mayor, Bob Colinas, is of Croatian heritage and acted vengefully against Petitioner who identifies as Serbian. Dkt. # 35-1 at 35-36.

On September 9, 2016, the case was removed to this Court. Dkt. #1 at 1. On March 10, 2017, the Court denied Petitioner's LUPA claim. Dkt. #24. The Court now addresses Petitioner's remaining RLUIPA and Section 1983 claims.

### III. DISCUSSION

**A. Standard of Review for Motions of Summary Judgment**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247 (1986). In ruling on summary judgment, courts do not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (citing *Federal Deposit Ins. Corp. v. O'Melveny & Meyers*, 969 F.2d 744, 747

(9th Cir. 1992)). Material facts are those which might affect the outcome of the suit under governing law. *Anderson*, 477 U.S. at 248.

Courts must draw all reasonable inferences in favor of the non-moving party. *See O'Melveny & Meyers*, 969 F.2d at 747 (rev'd on other grounds). However, to survive summary judgment, the nonmoving party must make a "sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Further, "[t]he mere existence of a scintilla of evidence in support of the petitioner's position will be insufficient; there must be evidence on which the jury could reasonably find for the petitioners." *Anderson*, 477 U.S. at 251.

**B. RLUIPA Claim**

RLUIPA was established to protect the "free exercise of religion from government regulations." *Anselmo v. County of Shasta, Cal.*, 878 F. Supp. 2d 1247, 1254 (E.D. Cal. 2012) (citing *Guru Nanak Sikh Soc. Of Yuba City v. County of Sutter*, 456 F.3d 978, 985 (9th Cir. 2006)). RLUIPA contains several provisions limiting government regulation of land use, referred to as: (1) the substantial burden provision, (2) the equal terms provision, (3) the nondiscrimination provision, and (4) the exclusions and limits provision. *See* 42 U.S.C. § 2000cc; *Centro Familiar Cristiano Buenas Nuevas v. City of Yuma*, 651 F.3d 1163, 1169 & n.24 (9th Cir. 2011); *see also Holy Ghost Revival Ministries v. City of Marysville*, 98 F. Supp. 3d 1153, 1170-71 (W.D. Wash. 2015). Petitioner asserts claims under RLUIPIA's first and second provisions. Dkt. # 1-1 at ¶ ¶ 22 and 24.

Under RLUIPA's substantial burden provision, a "government land-use regulation 'that imposes a substantial burden on the religious exercise of a [person, including a] religious assembly or institution' is unlawful 'unless the government demonstrates that imposition of the

ORDER - 5

burden . . . is in furtherance of a compelling government interest; and is the least restrictive means of furthering that compelling governmental interest.'" *Int'l Church of the Foursquare Gospel v. City of San Leandro*, 673 F.3d 1059, 1066 (9th Cir. 2011) (quoting 42 U.S.C. § 2000cc(a)(1)). Free religious exercise includes "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A). RLUIPA provides that "[t]he use, building, or conversion of real property for the purpose of religious exercise shall be considered to be religious exercise of the person or entity that uses or intends to use the property for that purpose." 42 U.S.C. § 2000cc-5(7)(B). Respondent argues that Petitioner fails to demonstrate that his exercise of religion was substantially burdened by the City's denial of his variance request. Dkt. #33 at 7.

Under RLUIPA's equal terms provision, governments are prohibited from imposing land-use "restriction[s] on a religious assembly 'on less than equal terms' with a nonreligious assembly." *Centro Familiar*, 651 F.3d at 1169 (citing 42 U.S.C. § 2000cc(b)). Respondent alleges that Petitioner does not qualify as a religious assembly or institution under RLUIPA. Dkt. #32-1 at 15. Respondent further argues that, even if Petitioner is a religious assembly, the City did not treat Petitioner on less than equal terms to comparable nonreligious or secular assemblies or institutions. Dkts. #32-1 at 16 and #33 at 7. For the reasons discussed below, the Court finds that Petitioner's RLUIPA claims fail under both provisions.

  *1. Substantial Burden Provision*

The Court's analysis under the "substantial burden" provision "proceeds in two sequential steps." *Int'l Church*, 673 F.3d at 1066. "First, the plaintiff must demonstrate that a government action has imposed a substantial burden on the plaintiff's religious exercise." *Id.* "Second, once

ORDER - 6

a plaintiff has shown a substantial burden, the government must show that its action was 'the least restrictive means' of 'further[ing] a compelling government interest.'" *Id.* (citation omitted).

Respondent argues that Petitioner fails to demonstrate a substantial burden on his free exercise of religion because alternative locations exist in which Petitioner may practice his religion. Dkt. #32-1 at 15. Petitioner responds that existing alternative places of worship do not alleviate his burden or diminish his interest in building a personal chapel. Dkt. #33 at 8-12. Also, Petitioner asserts that the City made its decision without providing a compelling government interest in the least restrictive means, thus, Petitioner's religious burden is unjustified. *Id*.

As noted above, RUILPA provides that "[t]he use, building, or conversion of real property for the purpose of religious exercise shall be considered to be religious exercise of the person or entity that uses or intends to use the property for that purpose." 42 U.S.C. § 2000cc-5(7)(B). The Ninth Circuit has stated that, "[f]or a land use regulation to impose a substantial burden, it must be oppressive to a significantly great extent." *Int'l Church*, 673 F.3d at 1066. (citation and internal quotation marks omitted). "A substantial burden exists where the governmental authority puts 'substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" *Id.* (citation omitted). "When the religious institution 'has no ready alternatives, or where the alternatives require substantial 'delay, uncertainty, and expense,' a complete denial of the application might be indicative of a substantial burden.'" *Int'l Church*, 673 F.3d at 1068 (citing *Westchester Day Sch. V. Vill. Of Mamaroneck*, 504 F.3d 338 (2nd Cir. 2007)).

Petitioner asserts that existing places of worship do not alleviate the burden on his free exercise of religion nor minimize his desire to build a personal chapel. Dkt. #33 at 9. Petitioner claims that traveling to existing Serbian Orthodox churches would be substantially burdensome

ORDER - 7

and pressure him to "modify his behavior and his beliefs." Dkt. #33 at 10 (quoting *Guru Nanak Sikh Soc.,* 456 F.3d at 988). However, Petitioner does not provide any evidence to demonstrate this substantial burden. For example, Petitioner has not provided data regarding the distance between his residence and alternative places of worship, or the cost of travel, nor has he differentiated the type of worship services between churches.

Respondent argues that because Petitioner may still practice his religion in his home or at local Serbian churches, the inconvenience of traveling to existing churches does not constitute a "substantial burden on the free exercise of religion." Dkt. #32-1 at 12 and 22 (citing *Korean Buddhist Dae Won Sa Temple of Hawaii v. Sullivan*, 953 P.2d 1315, 1320 (Haw. 1998); *Guru Nanak Sikh Soc.*, 56 F.3d at 988). Respondent points to Petitioner's own witness, Orthodox Priest Lavrentije Janjic, who states that Petitioner's prayer can take place anywhere, including within other churches and homes. Dkt. #32-1 at 14. Accordingly, Respondent has not prevented the Petitioner from continuing to worship anywhere by declining to grant a variance.

In *Int'l Church of the Foursquare Gospel v. City of San Leandro*, the court found that a substantial burden could exist where there were "no other suitable sites . . . in the City to house the Church's expanded operations." 673 F.3d at 1067. Petitioner's situation is distinguishable from that in *Int'l Church* because Petitioner fails to demonstrate that there are no other suitable sites for him to worship. Specifically, Petitioner has failed to show that he cannot attend services at a different church, or that he cannot continue to worship within his own home. Nor has Petitioner demonstrated that he could not procure another location within a different City zone to build a chapel.[3]

---

[3] Petitioner owns additional properties in the area. Dkt. #34 at 4, fn. 5.

ORDER - 8

The Court finds that Petitioner fails to demonstrate that his free exercise of religion is substantially burdened by the City's failure to grant a height variance. Petitioner has ready alternative places of worship at his disposal. Likewise, the City has not precluded the Petitioner from practicing his faith at home or other faith centers. *See San Jose Christian Coll. v. City of Morgan Hill*, 360 F.3d 1024, 1035 (9th Cir. 2004) ("[W]hile the PUD ordinance may have rendered College unable to provide education and/or worship at the Property, there is no evidence in the record demonstrating that college was precluding from using other sites within the city.").

The Court also finds that the City's zoning procedures "do not impose a substantial burden simply because they prevent a religious institution or person from constructing an ideal place of worship." Dkt. #33-1 at 12. In fact, Petitioner is in the same position as he was before submitting the variance request; he and his family may continue to worship within their home, where they have worshipped for nearly 20 years. Dkts. #32-1 at 22 and #34 at 3. While worshipping within a home or church in Snohomish and King Counties is unsatisfactory to Petitioner, this inconvenience does not rise to the level of a substantial burden. Dkt. #32-1 at 7. Additionally, nothing precludes Petitioner from submitting a building permit application for land located within a different zone. Dkt. #34 at 4. These options may be inconvenient, but are not substantially burdensome, particularly given that petitioner has experience in the construction business and owns additional properties.

Since Petitioner fails to demonstrate that the City imposed a substantial burden on his religious exercise, the Court need not consider whether the City's action furthers a compelling governmental interest in the least restrictive manner possible.

///

///

*2. Equal Terms Provision*

The Court next turns to Respondent's argument that Petitioner's equal terms claim fails as a matter of law. The "equal terms" provision provides: "No government shall impose or implement a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution." 42 U.S.C. § 2000cc(b)(1). To succeed on such a claim, the claimant must demonstrate four elements: "(1) an imposition or implementation of a land-use regulation, (2) by a government, (3) on a religious assembly or institution, (4) on less than equal terms with a nonreligious assembly or institution." *Corp. of the Catholic Archbishop of Seattle v. City of Seattle*, 28 F. Supp. 3d 1163, 1166 (W.D. Wash. 2014). Courts analyze the equal terms provision by examining whether a government regulation subjects similarly situated religious and secular assemblies or institutions to different land-use treatment. *Id.* Courts also ask whether a government has a legitimate justification for denying land-use permits. *Id.* at 1167. Respondent argues that (1) Petitioner does not qualify as a religious assembly or institution under RLUIPA; and (2) even if Petitioner is a religious assembly, the City did not treat Petitioner on less than equal terms to comparable nonreligious or secular assemblies or institutions. Dkt. #32-1 at 16.

To support its first argument, Respondent asserts that Petitioner is neither a religious assembly nor institution because he is seeking to build a chapel for personal worship only. However, Petitioner argues that by including his extended family in his faith-group, he classifies as an assembly. Dkt. #33-1 at 12. Petitioner argues that his family counts as an assembly because his family gathers for the common interest of prayer. *Id.* at 13. RLUIPA does not define the term "religious assembly." Thus, courts have used dictionary definitions to discern the term's plain and ordinary meaning. *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1230

(11th Cir. 2004). Black's Law Dictionary defines assembly as "a group of persons who are united and who meet for some common purpose." (10th ed. 2014). RLUIPA and case law use "assembly" and "institution" interchangeably. One definition of an "institution" includes "[t]he investiture of a cleric with a benefice, by which the cleric becomes responsible for the spiritual needs of the members of a parish." BLACK'S LAW DICTIONARY (10th ed. 2014). Unfortunately, neither definition addresses whether Petitioner's extended family may be included in a group-classification as an assembly or institution.

However, even if the Court accepts that Petitioner classifies as a religious assembly or intuition, the Court finds that Petitioner fails to demonstrate unequal treatment. Respondent argues that since "there are no buildings with[in] the City of Brier that exceed 30 feet in height as determined per the [City] Code," there are no secular or non-secular organizations to which the Petitioner can be compared. Dkts. #32-1 at 17 and #34 at 7. That being said, neither Petitioner nor Respondent provide this Court with evidence of whether or not the City denied all variances to proposed buildings above 30 feet. It is possible that a variance may have been approved, but the resulting building was not constructed.

In *Corp. of the Catholic Archbishop of Seattle*, petitioner Bishop Blanchet High School applied for a variance to construct 70-foot tall light poles for lighting athletic fields. 28 F. Supp.3d 1163, 1165 (W.D. Wash. 2014). These light poles would have exceeded Seattle's 30-foot residential height limit, so the City denied the variance. *Corp. of the Catholic Archbishop of Seattle,* 28 F. Supp. 3d at 1165. In the subsequent litigation, the Court denied Seattle's Motion for Summary Judgement, finding that Seattle violated RLUIPA because petitioner was similarly situated to comparable public schools that lit their athletic fields in residential neighborhoods, and had been allowed to construct light poles exceeding the City's height limit. *Id*. at 1169. In

ORDER - 11

that case, petitioners provided a comparison to a similarly situated school with similar light poles on similar athletic fields. *Id*. Here, Petitioner provides no such comparison. Dkt. #34 at 8. Instead, Petitioner compares his proposed chapel to City Light and AT&T electricity and cell phone towers that stand taller than 30 feet. Dkt. #34 at 7. Respondent responds that the proposed chapel and the utility towers differ in two ways: (1) utility towers and chapels serve different purposes and are not comparable; and (2) each tower is located within a utility corridor zone, rather than a residential zone where Petitioner's property is located. *Id*.

The Court agrees with Respondent. First, as other courts have noted, "[i]f a plaintiff does not offer a suitable comparator . . . there can be no cognizable evidence of less than equal treatment, and the plaintiff cannot meet its initial burden of proof." *Irshad Learning Center v. County of Dupage*, 937 F. Supp.2d 910, 932 (N.D. Ill. 2013). Utility towers are not suitable comparators to chapels. They serve completely different purposes, and they are located within different City zones with different zoning criteria. Thus, the Court finds that regardless of whether or not Petitioner is a religious assembly or institution, Petitioner does not demonstrate that he was treated less than equal to similarly situated applicants.

### C. Section 1983

Next, the Court considers Petitioner's Section 1983 claims. Dkt. #1-1 at 5-7. Petitioner's claims are based on the belief that City Council members hold personal vendettas against him, resulting in the decision to deny his variance. Dkt. #1-1 at ¶¶ 29-31. Petitioner alleges that Respondent's variance denial violates his right to free exercise of religion and equal protection.[4] *Id*. Respondent argues that Petitioner's Section 1983 claims are foreclosed by the Court's prior LUPA decision. Dkt. #32 at 18. In the alternative, Respondent argues that Petitioner's Section

---

[4] Petitioner initially alleged a "due process" claim in his Complaint; however, he has since clarified that he is not asserting an independent due process claim. Dkt. #33 at 17.

1983 claims fail because the City's variance decision was made without bias or discrimination. *Id.* at 20. Respondent also contends that even if the Court's LUPA decision does not foreclose Petitioner's Section 1983 claims, Petitioner is not entitled to a variance because his application did not meet all eight of the City's criteria. *Id.* at 20. In response, Petitioner argues that state remedies do not foreclose federal remedies, and Section 1983 is an independent remedy to state law. Dkt. #33 at 16 (citing *Holy Ghost Revival Ministries*, 98 F. Supp. 3d at 1165; *Monroe v. Pape*, 365 U.S. 167, 183 (1961)). Petitioner also argues that questions of material fact preclude summary judgment. As discussed below, the Court finds that Petitioner's Section 1983 claims fail as a matter of law because: (1) Petitioner's 1983 claims rely on the same facts and theories as his RLUIPA equal terms claims; (2) Petitioner's discrimination claims are weakened by the fact that his variance application only met two of eight mandatory criteria for granting variances (Dkt. #32-1 at 17-18); and (3) even if the Petitioner was granted a variance, he did not have a building permit to begin construction. Therefore, the Court need not address whether its prior LUPA decision forecloses Petitioner's claims.

Petitioner's Section 1983 claims rely on the same facts and theories as his RLUIPA equal terms claims. As previously discussed, Petitioner has not provided enough evidence for a jury to find that the City treated him on less than equal terms to comparable nonreligious or secular assemblies or institutions. Petitioner's comparison of chapels to utility towers is unpersuasive. Dkt. #32-1 at 17. Thus, the Court finds that Petitioner's Equal Protection claim fails on the basis that Petitioner cannot demonstrate an appropriate comparator.

The Court also agrees with Respondent that Petitioner's discrimination claims are undermined by the fact that his variance application met only two of eight mandatory criteria for granting variances. Dkt. #32-1 at 17-18. Petitioner has not demonstrated that any of the eight

ORDER - 13

variance criteria are invalid, nor that the City's alleged discriminatory acts prevented him from meeting the eight criteria. *See Bulchis v. City of Edmonds*, 671 F. Supp. 1270, 1271 (W.D. Wash. 1987) (finding the City's process for denying a conditional use permit invalid). Further, Petitioner has not submitted evidence that other organizations, similarly situated or not, have obtained variances while only meeting two of the City's eight mandatory criteria. Since there is no material issue with the City's criteria for evaluating a variance, Petitioner fails to demonstrate either unequal treatment or any racial animus.

In addition, the Court notes that regardless of whether or not the City granted Petitioner's variance request, Petitioner could not construct his chapel. The City does not allow construction without a building permit (and variance when necessary). Dkt. #34 at 12 and 24. Petitioner has not demonstrated that anyone within the City has been allowed to begin construction without a building permit, nor has be demonstrated that he would have received a building permit if he had first received the variance. Since Petitioner did not submit a complete building permit application, he could not begin construction. *Id.*

Likewise, Petitioner has not produced sufficient evidence that the City's decision was bias-motivated. Dkt. #33 at 21. Petitioner asserts "proof [of intentional unequal treatment] is not essential to" denying Respondent's Motion for summary judgment because the exercise of religion is an issue of fundamental rights. Dkt. #33 at 17-18. However, generally to defeat a motion for summary judgment petitioners must provide evidence that respondent acted with discriminatory intent. *See Thorton v. City of St. Helens*, 425 F.3d 1158, 1167 (9th Cir. 2005). Valid evidence of discriminatory intent must be more than a mere a conclusory statement of bias. *Id.* Additionally, being a member of a specific classification, by itself, does not mean that a petitioner has suffered discrimination. *Id.*

Petitioner claims in conclusory manner that City officials acted discriminatorily toward him. Dkt. #1-1 at ¶ ¶ 29-30. Specifically, Petitioner believes that Mayor Colinas is of Croatian heritage. Dkt. # 35-1 at 35-36. Petitioner asserts that a "longstanding ethnic strife" caused Croatians to dislike Serbians. Dkt. #33 at 17. As a result of ethnic tension, Petitioner believes Mayor Colinas acted negatively toward him. Dkt. # 35-1 at 35-36. Respondent asserts its decision to deny Petitioner's variance had nothing to do with Mayor Colinas' or the City Councilmembers' alleged personal vendettas or prejudice, nor Petitioner's Serbian heritage. *Id*. at 22. Instead, as demonstrated through email exchanges between City Planners and Petitioner, City Planners provided him feedback and opportunities to amend or complete his variance request and invited Petitioner to discuss the variance at open City Council hearings. AR 4 and 70. Ultimately he failed to meet six of the eight <u>mandatory</u> variance criteria. Petitioner simply has not provided evidence that City officials acted discriminatorily in the variance process. For all of these reasons, Petitioner's Section 1983 claims must fail as a matter of law.

### D. Delay Damages

Finally, Respondent seeks summary judgment on the basis that the only damages sought by Petitioner in this matter are improper. Petitioner seeks $300,000 in "delay" damages to cover the alleged increase in cost of building materials and labor since the denial of his variance. Dkt. # 33-1 at ¶ 19. Given the Court has found that Petitioner's claims fail as a matter of law, this argument is now moot, and the Court will not address it.

### E. Motion for Leave to File Surreply

On August 4, 2017, Petitioner filed a Motion For Leave To File Surreply, asking the Court to consider additional arguments as to why he wants to build his chapel. Dkt. #37. Under Local Civil Rule 7(g), surreplies are limited to motions to strike. Since Petitioner does not assert a

motion to strike in his proposed surreply, the surreply is improper. Moreover, the Court understands Petitioner's arguments from the existing briefing and no further briefing is required. Therefore, the Court DENIES Petitioner's Motion for Leave To File Surreply.

### F. Motion to Continue Trial and Amend Case Schedule

Also on August 4, 2017, Petitioner filed a Motion to Continue Trial and Amend Case Schedule in order to find two replacement expert witnesses. Dkt. #38. Petitioner is apparently dissatisfied with his expert witnesses Mr. Janjic and Chris Gochev, asserting that they provided misleading information about their qualifications. *Id.* at 2-3. Petitioner proposes a four-month continuance to find new witnesses, claiming that a continuance is necessary to present an adequate case and that four months will not substantially inconvenience Respondents. *Id.* at 5. Given the Court has found that Petitioner's claims fail as a matter of law, this argument is now moot, and therefore the motion will be DENIED.

## IV. CONCLUSION

Having reviewed the relevant pleadings, the Declarations and exhibits attached thereto, and the remainder of the record, the Court hereby finds and ORDERS:

1. Respondent's Motion for Summary Judgment (Dkt. #32) is GRANTED and the remainder of Petitioner's claims are DISMISSED in their entirety.

2. Petitioner's Motions For Leave To File Surreply (Dkt. #37) and to Continue Trial and Amend Case Schedule (Dkt. #38) are DENIED.

3. This case is now CLOSED.

///

///

///

DATED this 7th day of September, 2017.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE